UNITED STATES DISTRICT COURT
OF THE DISTRICT OF COLUMBIA

FAROOQUE AHMED,

       Plaintiff,
c/o #77315-083
FCI-Terre Haute, POB 33
Terre Haute, IN  47807

vs.

Federal Bureau of Prisons(BOP)
dba Plaintiff's custodian,
FRANK LARA or successor, dba Asst.
Dir. Corr. Prog. Div.(AD/CPD),
GUY PAGLI or succesor, dba Chief,
Counter Terr. Unit(CTU),
IAN CONNORS, dba Administrator, Nat'l
Inmate Affairs,
SARA M. REVELL, dba Res. Dir., N. Cent.
Regional Office,
J.R. BELL, dba CEO aka Warden, FCI-
Terre Haute, IN ,

       Defendants,

Central Office, Corr. Programs Div.(CPD)/PMB
Federal Bureau of Prisons(BOP)
320 First St., NW
Washington, D.C. ·20534

Case No.

Per 28 USC §1331

Case: 1:19–cv–01189
Assigned To : McFadden, Trevor N.
Assign. Date : 4/22/2019
Description: Pro Se General (F-DECK)

COMPLAINT

I. JURISDICTION

1.    This Hon. Court has jurisdiction to hear this Complaint pursuant to the following statutory authorities:(a) Administrative Procedures Act, 5 USC §702, Right of Review, as Plaintiff is a person suffering legal wrongs, because of agency/BOP action(s). . .,seeking judicial review thereof. (b) 28 USC §2201, as Plaintiff seeks declaritory judgment from the Court in relation to his APA claim(s). (c) 28 USC §1331, as Plaintiff states cognizable claims of violations of the U.S. Constitution, and laws in force in the District of Columbia by defendants whose principle corporate office  is  in the District(D.C.).  All defendant BOP employees operate and do business through this D.C. headquarters and principle  Central Office, while the Plaintiff is in BOP custody, by and through U.S. Marshal#77315-083, by and through the U.S. Attorney General [18 USC §§4001,4041,

1

4042,4081,3621(PS#P5100.08 BOP)] granting the authority to detain, classify, designate Plaintiff to the Director of the BOP,  who's headquartered at the above cited address for the BOP.   Defendant FRANK LARA, AD/CPD, is the person with the alleged final authority, who signed off on the NOTICE to Inmate of [his/Plaintiff's] trans-fer to CMU (see attached Exhibit A). The actions/omissions by de-fendants violated both Plaintiff's Fifth Amendment substantive Due Process rights, and his right for Procedural Due Process.   These proper claims are supported by prior conclusions of fact and law of this Court as decided in Aref  v.  Holder/Lynch, 833 F.2d 242,251( DC CIR 2016); Royer  v.  FED. BUREAU OF PRISONS(BOP), 933 F.Supp. 2d 170,192(DDC 2013) and otherwise.

II. PARTIES

2.    Farooque Ahmed is the CMU designated Plaintiff  detained at FCI-Terre Haute, Indiana, by and through authorization of defendant FRANK LARA, or his successor, as the Asst. Director,  Correctional Programs Div.(CPD), Privatization Management Branch(PMB),  who is headquartered in D.C. at the cited BOP Central Office. Plaintiff is serving a 23 year sentence, of which he has served  approximately 8½ years.  He has served over 6 years under deprivations of CMU.

3.    Defendant FRANK LARA, or successor, is a BOP employee dba the Assistant Director(AD),CPD. He is responsible for BOP  subagencies inclusive of but not limited to Privatization Management Branch(PMB), Counter Terrorism Unit(CTU), and is the final authority of the BOP causing Plaintiff's placements(plural)in the CMU at Terre Haute, IN. AD/CPD is at all times responsible for compliance  with  existing statutory requirements, regulatory, and otherwise limitations  and authorities governing classification, security assessment and as-signment, and/or otherwise designation, placement and detention of Plaintiff in CMU, and is responsible for ensuring all subagencies/ subordinates comply with 18 USC §§4001,4041,4042,4081,3621;  28CFR §§541.40,541.41; BOP controlling classification/designation Program Statement(PS) P5100.08. Failure to comply and fulfill with all re-gulations and statutory requirements gives rise to Plaintiff's cog-

2

nizable substantive and procedural due process claims,  entitling
Plaintiff for relief by and through the due protections  of  the
above set forth statutory and constitutional authorities (see jur-
isdiction, I. above).  This defendant is sued in his official  and
individual capacity at his BOP headquarters office in  Washington,
D.C.(DC).  Defendant LARA knows or should know that  CTU executed
"counterfeit," actually fraudulent,BOP Forms, Transfer Packets,etc,
that are NOT authorized by any existing authority, for causing the
Form 324 Code Placement of Plaintiff in a CMU, as a "Program  Par-
ticipant," when a Form 324 Code Placement BOP transfer only author-
izes an institution CEO aka Warden to transfer a BOP  inmate  into
the Life Connections Program(LCP) with the mandatory MGTV  assign-
ment to ensure Plaintiff's security assignment[P5100.08]  is / was
commensurate with all other inmates at the designated institution;
and in particular in the Form 324 Code Program defendant caused the
Plaintiff to participate "involuntarily". Such irregular acts/omis-
sions have caused injuries to Plaintiff as a result of loss of lib-
erties as are ordinary/typical in non-CMU prison life, in violation
of Plaintiff's substantive and procedural due process;  equal pro-
tection of rights.

4.    Defendant BOP dba an agency of the United States  Department
of Justice(DOJ) is responsible for each and all defendants' acts/
omissions in their irregular practices of CMU placements,  noncom-
pliant with 18 USC §§4001,4041,4042,3621; 28CFR §§541.40,  540.41,
P5100.08, and otherwise (hereinafter P5100.08), and the protection
of constitutional, statutory, regulatory, and otherwise  substan-
tive/procedural due process, and equal protection of law rights of
the Plaintiff. The BOP's failure, refusal to do so upon repetitive
and proper notice by Plaintiff, has given rise to his valid cogni-
zable claims herein stated. The BOP's callous indifference    and
reckless negligence in permitting other defendants  to  circumvent
existing authorities and regulatory prohibitions for  effectuating
the transfer of Plaintiff via Form 324 Code Program transfer,with-
out compliance with the specific required procedures, to an insti-

tution not commensurate with his security classification/ assignment,
and forcing him to live with every other inmate not commensurate
with Plaintiff's "low" security level classification,  recklessly
endangering him, staff, and other inmates, and clearly injuring him
by depriving him of due substantive and procedural due process as he
is entitled to, as well as his right to be equally protected by the
law. Defendant BOP is sued in its official capacity  through its
Central Office headquarters in Washington, D.C.(DC).

5.   Defendant GUY PAGLI dba Chief, BOP's Counter Terrorism  Unit
(CTU), which is a subagency of the BOP's CPD, therefore, a subord-
inate of FRANK LARA, or his succesor(possibly Mr. Carvajal[sp?]) ,
is/was at all times, relative to Plaintiff, responsible  for  com-
pliance with BOP policy, the Constitution, above cited  statutes,
herein combined and styled as P5100.08, and BOP P1222.06 Forms Man-
agement Program Statement, which requires(for example)official"BP"
forms to be executed by all BOP components for effectuation of all
Form 324 Code Program transfers, with their essential CMS-404 MGTV
official and complete forms, which ensure all inmates in that Form
324 Code Program are commensurate with one another, as mandated by
18 USC §3621; P5100.08. Defendant PAGLI was obligated  to use, or
ensure that required BOP officials used the mandated "BP" A-741,A-
742 Forms, voluntary applications, for causing placement of Plain-
tiff in the CMU(twice)under the same Form 324 Code Program transfer,
without complete use of mandatory forms and procedures, causal  of
injuries and damages suffered by Plaintiff, the result of his sub-
stantive and procedural due process and equal protection rights have
clearly been violated depriving him of due protections by this de-
fendant, who fraudulently created a "home-made" Form 324 Code Pro-
gram transfer, in violation of law and regulations,  unauthorized
acts/omissions, wrong doing of record contrary to the direction of
U.S. Government/DOJ/BOP, or P1222.06, to "trick" the  D.S.C.C. Ad-
ministrator into effectuating the transfer of Plaintiff to CMU via
"fabricated" Form 324 Code Program authorization, to a program with
no MGTV, no code "N", administrative security level assignment , that

is legally appropriate or commensurate with Plaintiff's low secur-
ity custody level.  Defendant knows or should know 18 USC §3621  ,
P5100.08, etc. does not permit such irregular transfer and  place-
ment, and was required to verify and correct any violation upon the
Plaintiff's complaints, administrative grievance proceedings, there-
of. Those violations, complained again herein, caused firm grounds
for Plaintiff's cognizable substantive and procedural due process
claims, and equal protections claims, which have injured Plaintiff
by depriving him of those protected rights.  Defendant PAGLI   is
sued in his official and individual capacities, as a person direct-
ly responsible by and through his BOP headquarters office in Wash-
ington, D.C.(DC).

6.   Defendants J.R. BELL dba BOP CEO, SARA M. REVELL dba  BOP N.
Central Regional Office, Regional Director, or actor therefore, IAN
CONNORS, dba BOP Nat'l Inmate Appeals Administrators, are/were re-
sponsible at all times for protecting Plaintiff's constitutionaland
otherwise protected rights as relate to Plaintiff's  repeated at-
tempts for remedy, relief, or acknowledgment of the violations  of
Plaintiff's denial of his protections of due process rights in his
NOTICES to these defendants by and through the BOP  Administrative
Remedy numbers: 940508-F1, 940508-R1, 940508-A1, which  were  re-
peatedly denied with defendants' claims the BOP, et al.,  complied
with P5100.08, in its effectuation of procedure, even though no such
authorized procedure exists, thereby they callously ignored  with
reckless indifference, and with malicious intent, the fact that the
Plaintiff's lawful protected due process and equal protection rights
are willfully and definately being violated, as their own  records
affirm he is classified as a "low" custody level inmate,  yet des-
ignated to a medium custody level institution, absent the required
EMS-409 MGTV Form complete and timely entered affirming assignment,
housing with inmates with inmates of "high" or "MAX"(ADX) custody
level security assignments, absent MGTV's, and  none are commensu-
rate with the FCI-Terre Haute medium security level, nor with each
others security, as required at 18 USC §§4001,3621; P5100.08.  De-

fendants' failure or refusal to acknowledge or otherwise  attempt
to remedy such obvious violations of existing mandated  procedure
for Form 324 Code Program placements caused additional injury, via
defendants' omissions from effecuating the required enforcement of
the law.  Defendants are sued in their offical and individual ca-
pacities, as all operate under, by and through BOP limited  auth-
ority at, and under direction of the BOP/DOJ Washington, D.C. head-
quarters. Defendants are aiding, abetting, and causing to be con-
cealed under color of lawful authority veil, the fraud, misrepre-
senatation, and otherwise clandestine conspiracy by/with other de-
fendants against Plaintiff for making it appear that Plaintiff is
designated for FCI-Terre-Haute for an "official" Form 324 Code Pro-
gram, as a "volutary participant", when the law, P5100.08,   nor
other authority in force in D.C., or otherwise permit that.   De-
fendants' unlawful behavior is facially unconsitutional,  because
fraud, misrepresentation, making home-made, unofficial BOP Forms,
for contriving a CMU designation "appear" to be legitimate,  cer-
tainly violates Plaintiff's rights for substantive, procedural due
process protections and equal protection of the law that have now
and continue causing Plaintiff injuries and damages giving rise to
Plaintiff's due and cognizable claims for remedy and relief.

III. PROOF OF EXHAUSTION

7.   Plaintiff has exhausted all available administrative remedi-
es, via BOP Administrative Remedy proceedings numbered:940508-F1,
940508-R1, 940508-A1.  Defendant's concealment of the true nature
of the privatized for profit CMUs, which are in fact, per Congres-
sional appropriations, and per contract BOP is part to  with  the
"overseeing" vendor operating from a private non-government, non-
BOP office at 796 N. Foxcroft, Suite 201, Martinsburg, WV  25401,
has limited Plaintiff's ability for PRECISELY and/or SPECIFICALLY
exhausting, or for filing certain claims, because of the  impossi-
bility for determining "WHO IS RESPONSIBLE FOR WHAT"(?).  the BOP
denies Plaintiff access for the forms, signatures or   particular

forms, and otherwise disclosures and information involving the
complex and secretive "CMU" transfer.  Even high ranking BOP em-
ployees, such as the FCI-Terre Haute CEO, CMU Unit Team, are de-
nied access for the Form 324 Code Program "counterfeit" documen-
tation secreted by CTU, and otherwise, when in ALL other, 100%
of, except with CMU transfers, classifications, designations which
are executed are done through the CEO and Unit Team.  In fact
P5100.08 **ONLY** authorizes the CEO, Chaplain, and Unit Team for ex-
cution of Form 324 Code Program transfers for LCP, using manda-
tory BP-A-741, BP-A-742, Form 324 Code Program transfer document-
ation and the completed transfer packet signed by the CEO and for-
wrded for the D.S.C.C. by the inmate's institution Unit Team. The
BOP, AD/DPD, CTU **"hide"** these forms from Plaintiff and their own
fellow staff, because the **"fake"**, unofficial forms represent the
fraud, and all defendants know or should know this irregular hid-
ing of the record is wrong and violates the laws and regulations
that constitute the ONLY authority for the inmate's transfer to a
legitimate program. This conspiracy for hiding documents, infor-
mation and details peculiar to the inmates records, which are to
be transparent as a matter of statutory authority, 5 USC §§ 552/
552a, FOIA/PA, makes "precise" exhaustion of administrative remed-
ies impossible and subjects the inmate-victim to injuries as re-
sult of false/fabricated and tainted records.

IV. GOVERNING CASE LAW PRECEDENT IN SUPPORT OF THIS COMPLAINT

8.   Aref  v  Holder/Lynch, 833 F.3d 242,251(DC CR 2016)

9.   Royer  v  FBOP, 933 F.Supp. 2d 170,192(DDC 2013)

V.   CLAIM ONE(PROCEDURAL DUE PROCESS/EQUAL PROTECTION VIOLATIONS)

10.  Prior to April 9, 2018, when Plaintiff was returned to CMU at
Terre Haute, by and through color of authoritative signature of
defendant  LARA. defendants were required to "provide Plaintiff a
prior NOTICE and some kind of opportunity for being heard before
final deprivation" of protected interests. Though the nature of

that NOTICE and hearing is flexible, <u>English  v  District of Columbia</u>,815 F.Supp. 2d 254,264(DDC 2011), and failed to fulfill the due process requirements, and refusal to correct that upon Plaintiff's request for corrective remedy via BOP inmate Administrative process.

11.  Defendants LARA, PAGLI, and BOP failed to provide  Plaintiff the required NOTICE of the factual basis for their  decision  and implementation of process for returning Plaintiff to CMU, nor provided him fair opportunity for rebuttal of the baseless   allegations used for making it appear Plaintiff deserved or  required a return to CMU, even though he had a flawless disciplinary record, and zero incidents relative to his prior CMU placement. After his release from CMU into "ordinary/typical" BOP General Population(GP). The NOTICE is among the most important procedural  mechanisms for the purpose of avoiding erronious. deprivations. See previous CMU inmate <u>Royer  v  FBOP</u>, 933 F.Supp.2d 170.192(DDC 2008) (quoting <u>Wilkinson  v  Austin</u>, 545 U.S. 209,226,  125 S.Ct. 2384,  162 L.Ed.2d 174(2005).  Other defendants failed to correct.

12.  Defendants LARA, PAGLI, BOP fraudulently allege   to   have transferred Plaintiff via P5100.08, which is the BOPs   governing procedural transfer, classification, designation,   security  assignment(hereinafter transfer or placement policy), with  authentic use of Form 324 Code Program transfer process, but that authority does NOT authorize defendants to: (1) place Plaintiff in  a CMU via Form 324 Code Program process; (2) create home-made,  unofficial non-BOP forms, for falsifying the official counterfeited forms for making Form 324 Code Program placement of Plaintiff  as "colorable", appearing as if legally valid; (3) signing off on the forms when P5100.08 only authorizes a BOP CEO and the Unit Team to execute the form(s) for causing Plaintiff or any inmate to be referred and designated for a Form 324 Code Program transfer;   (4) to by-pass P5100.08, which requires each inmate placed in a  Form 324 Code Program to "volutarily apply", via BP-A-741,BP-A-742 forms

which are to be approved by the custodial institution's CEO   aka
Warden; (5) by-pass 18 USC §§4001,3621; P5100.08, and supercede it
for an "inferior" policy [P5214.02], which existing authority does
not defer to; (6) forward unofficial, fraudulent, counterfeit(see
BOP P1222.06 Forms "Management Program Statement") forms for the
D.S.C.C. for effecuating Form 324 Code Program transfers NOT au-
thorized through existing authorities; (7) transfer Plaintiff who
has 8 security points, which makes him a "low" security level in-
mate, to a BOP institution for medium level inmates,  who have 12
- 23 security point levels, to be housed with inmates with   24 -
35 points, who are "high" (US Penitentiary qualified) and MAX(ADX)
where they just sent Mexican Drug Lord nicknamed "CHAPO")security/
custody levels commensurate with one anothers; (8) cause  inmates
to live together with 0 - 35,  camp, low thru MAX security levels,
which is done at NO OTHER UNIT IN THE ENTIRE BOP. No prison exer-
cises this dangerous and violative practice except the  irregular
CMUs. This dangerous practice recently resulted in another  "low"
inmate being murdered on 10 November 2018, by a "high" prisoner a
ADX/MAX step-down inmate (one with NOTHING TO LOSE!).  David Neal
who was nearly 70 years of age lost his life to the BOP's danger-
ous, unauthorized, irregular abuse for secretly housing  inmates
in CMUs. Had the law/authority been obeyed, David would not  have
lost his life to such danger.  [ROBERT DAVID NEAL]

13.  Defendants deliberate indifference for obediance of the laws
rules, regulations and policies constitutes reckless endangerment,
bad acts in excess of negligence, and in furtherance thereof that
deprives Plaintiff of his procedural due process protections,  as
well as deprivation of constitutional protections of due process;
equal protection of law, and otherwise. In real terms the unlawful
irregular placement in CMU deprives Plaintiff of 100% of  contact
with his wife, children, parents, other family members;  also  it
deprives Plainfiff of ordinary/typical prison opportunities  for
ecucation, food services, recreational opportunities and more. It

is a punitive deprivation of services and conditions common to the population of "low" level inmates.

VI.   CLAIM TWO:   SUBSTANTIVE DUE PROCESS VIOLATIONS, 5TH AMENDMENT

14.   Since <u>Aref</u> holdings in the appeals court for D.C.   (<u>Aref v LYNCH</u>), which established in 2016, that because CMU inmates are confined in the severely restrictive units "indefinitely", that all post-2016 inmates for placement in CMUs are entitled to 5th Amendment due process protections, due to the various liberty interests in question.   That case, <u>Aref</u>, has established a baseline and precedent relative to CMU placement, and the due process protected rights associated therewith.   Plaintiff could redundantly recite this Court's precedent and waste the Court's time, but this matter is very simple.   Plaintiff, who has spent over 6 years in the CMUs with ZERO communication related incident reports,   ZERO violent incident reports, and only the most minor of incidents in his almost 9 years BOP record, was released from CMU to the BOPs Genral Population at an ordinary "low" security facility,   Plaintiff maintained his exemplary behavior by having ZERO incident reports. Yet, in April 2018, Plaintiff was arbitrarily returned to CMU, with no real explanation, as no incidents ocurred and he was not afforded the due process mandated by the Court in <u>Aref</u>.

15.   This second CMU placement against Plaintiff -is devastating his family, especially his children and his wife.   This arbitrary CMU placement is ruining Plaintiff's marriage, splitting up family, when the "alleged" BOP policy is for nurturing inmate's familial ties, as it is more rehabilitatively logical for promoting a successful re-entry into society.   Plaintiff is not a terrorist.   He does not speak nor support terrorists.   He has no conversations with anyone, certainly not other inmates, about terrorism, or any terrorist state. Plaintiff has not had one incident in CMU or when he was released that shows anything contrary to what is stated in the foregoing, and the allegations made in the CMU,   post-CMU placement, NOTICE are patently false, and have no basis in truth.

Plaintiff does not, has not, continued to support extremist Muslim
views. Plaintiff does not hate the U.S. nor non-Muslims.    Some
American inmates at FCI-Ashland did not like Plaintiff,   because
of their false presumptions that he is a terrorist, and because of
his religion, foreign status, appearance, accent. Plaintiff  was
the victim of racial profiling and prejudice. No "altercation'oc-
curred between him and anyone. The FCI-Ashland inmate  told   SIS
whatever he had to say for "getting rid of" Plaintiff. An inmate's
lies, with no evidence, does not support defendants'  claims   for
returning Plaintiff to CMU.  Plaintiff is not interested in "rad-
icalizing" anyone, because he is not a "radical" himself.   Even
if Plaintiff had received an incident report for some wrong doing,
which he has not, because the NOTICE, Exhibit A, attached   here-
with is not true. Defendants were obligated by the Constitutional
precedent sat in <u>Aref</u> to provide Plaintiff adequate due process ,
which defendants have NOT done.  Nor did any defendant in response
to Plaintiff's administrative requests for remedy choose to right
the wrong.

16.  The substantive component of the Due Process Clause protects
fundamental rights, or those that are implicit in the  concept of
ordered liberty, see <u>Vellay v District of Columbia</u>, 893 F.Supp.
2d 115,123(DDC 2012)(quoting <u>Palko v Connecticut</u>, 302 U.S. 319,
325, 58 S.Ct. 149, 8 L Ed 288(1937).

                           BRIEF OVERVIEW

17.  Due Process challenges, both procedural and substantive, re-
quire the deprivation of a liberty or property interest. The <u>Aref</u>
court has previously established that Plaintiff does have a liber-
ty interest at stake.

18.  The Plaintiff is deprived of many benefits to which he has a
legal right; see <u>Bowman v Eiddon</u>, 848 F.3d 1034,1039-40(DDC 2017).
The legal rights Plaintiff is the beneficiary of, are established
in <u>Aref</u>, <u>Royer</u>, and otherwise affirmed and binding in this Circuit.

                                11

19.  Others, left out, are as follows, but not limited to, Plaintiff's right for having adequate access for educational, recreational, food services, religious, employment opportunities, programming, which Plaintiff has been deprived of for over six years now, as described in great detail in the foregoing and following sections of this complaint.

20.  Plaintiff will now provide the Court with a prior and procedural history relative to the CMUs, as well as relavant to Plaintiff's cognizable statements of claim for relief.

PRIOR HISTORY

21.  This matter before the Court has previously been argued, reviewed and decided, see Aref v Holder, 1:10-cv-00539,   U.S. District Court of the District of Columbia; Aref v Holder, 2015 Dist. LEXIS 79636(DDC Mar. 16, 2015); Aref v Lynch, U.S. Court of Appeals for the District of Columbia Circuit, 833 F.3d 242;2016 U.S. APP. LEXIS 15230, No. 15-5154, argued: March 15, 2016,  Decided: August 19, 2016.

22.  Communication Management Unit(CMU) CLASS ACTION PLAINTIFFS in Aref v Lynch, were represented by the following counsel,   re cause for appellants:
Counsel: Rachel Anna Meeropol argued the cause for appellants with her on the briefs were Pardiss Kebriai and Gregory Stewart Silbert. Shayana D. Kadidal entered an appearance.
    William R. Stein, Scott H. Christensen, and Elizabeth C. Solander were on the brief for amicus curiae  The Legal Aid Society of the City of New York, et al., in support of Plaintiff's - appellants.
    Johnathan Hafetz was on the brief for amicus curiae Seton Hall University School of Law Center for Social Justice in support of appellants.
Judges: Before the Hon. Circuit Judges, BROWN and SRINIVANSAN, and Hon. Senior Circuit Judge EDWARDS. Opinion for the Court filed by Hon. Circuit Judge BROWN.

<u>Case Summary</u>: Duration and typicality of confinement in and AT-YPICALITY of federal prison CMUs, in which family visits and communications with outside world [are] curtailed, gives rise to 5th Amendment liberty interest <u>REQUIRING</u> due process.   Prisoners who spent several years housed in CMUs [are] ENTITLED to determination of whether they were afforded sufficient process (emphasis on Ahmed, Farooque).

<u>OVERVIEW</u>: HOLDINGS: [1] The indefinite duration of confinement in and atypicality of CMUs gives rise to a 5th Amendment liberty interest entitling any inmate placed in the CMUs the right for sufficient process; [2] Prisoners can recover compensatory damages under the Prison Litigation Reform Act(PLRA) for injuries that are neither mental or emotional; [3] Prisoners who allege actual harms that are neither mental or emotional are entitled to punitive damages if they can show the defendants' conduct was motivated by evil motive OR INTENT or involved RECKLESS or CALLOUS INDIFFERENCE; [4] The chief of the Federal Bureau of Prisons(BOP) Counter-Terrorism Unit(CTU) was entitled to qualified immunity or PLRA claims.

<u>OUTCOME</u>: Summary Judgment affirmed in Part; reversed and remanded in Part.

<u>NOTICE</u>:  The mootness doctrine does not apply to the matter now before the Court by Plaintiff, Farooque Ahmed, unless the Court provides him a form of restraining order to prevent any future arbitrary CMU placement without affording him the 5th Amendment  due process for CMU placement he is entitled, because Plaintiff  has for a second time been placed in CMU absent the REQUIRED due process, and Plaintiff had zero disciplinary infractions since he was released from CMU into BOP General Population(GP),  so no legitimate evidence exists to "determine" that he requires  return placement in CMU.

23.  The 5th Amendment is "supposed to" ensure no individual is deprived of life, liberty or property, without due process  of law. U.S. Const., Amend V.

24. Identifying liberty interests in confinement conditions fo-
cuses on the nature of deprivation, and its duration. A liberty
interest exists only if the conditions amount to an ATYPICAL and
SIGNIFICANT HARDSHIP ON the INMATE IN RELATION TO THE ORDINARY
INCIDENTS OF PRISON LIFE. Absent a liberty interest, an inmate is
not entitled to any process.

25. In the prison context, a liberty interest arises only when the
deprivation imposes an atypical and significant hardship on an
inmate in relation to the MOST RESTRICTIVE CONFINEMENT CONDITIONS
that prison officials "ROUTINELY IMPOSE" on inmates serving simi-
lar sentences. Because Administrative Segregation(Ad-Seg) is most
routinealy imposed, the Court held it constitutes the proper base-
line. The comparison does not end the court's analysis. The Court
must look not only to the nature of the deprivation, but also to
the length of the sentence the prisoner is serving, and also its
length in evaluating ATYPICALITY and SIGNIFICANCE.

26. This Court has concluded that the proper methodology for ev-
aluating deprivation claims under Sandin v Conner, 515 U.S. 472,
115 S.Ct. 2293, 132 L Ed 2d 418(1995) is to consider (i) the con-
ditions of confinement relative to administrative segregation,(ii)
the duration of the confinement generally, and (iii) the duration
of the relative to LENGTH OF ADMINISTRATIVE SEGREGATION ROUTIN-
ELY IMPOSED ON PRISONERS SERVING SIMILAR SENTENCES. We also EM-
PHASIZE that a liberty interest can potentially arise under less
severe conditions when the DEPRIVATION IS PROLONGED OR INDEFINITE,
(emphasis on Plaintiff who has a 23 year sentence he has already
served 9 years of, yet he has served in excess of 6 years of the
9 years served in the like administrative detention CMUs, even
though he has had zero BOP disciplinary infractions for support-
ing why he was first placed in CMU.) Subsequently released after
approximately five years. Only to be returned to CMU with no di-
sciplinary infractions, and no legitimate explanation nor peno-
logical reason, and no due process, as the 5th Amendment requir-
es.

14

27.  While the Constitution itself does not give rise  to a lib-
erty interest in avoiding transfer to more adverse conditions of
confinement, a lesser liberty interest in  avoiding  particular
conditions of confinement may arise if the Sandin  requirements
are met.

28.  Prisoners can prevail on claims under the PLRA only if they
show: (1) that the official violated a statutory or constitution-
al right, and (2) that the right was clearly established, it must
have been clear to a reasonable officer that his conduct was un-
lawful in the situation he confronted. The court is not to define
the right a too high a level of generality, instead  the  court
msut examine the right in its particular context.

29.  The District Court granted summary judgment for the govern-
ment on each claim of Plaintiffs in Aref  v  Holder/Lynch.

30.  The Court of Appeals found the duration and atypicality  of
the CMU designation SUFFICIENT TO GIVE RISE TO A LIBERTY INTER  -
EST, and "reversed" the District Court's decision  and  remanded
the case for further proceedings to determine whether appellants
were afforded sufficient process.

31.  The Circuit Court was misled by the BOP, Rachel Meeropol of
Center for Constitutional Rights, and otherwise counsel in Aref.
Their misrepresentations led to the Court "believing" that  CMUs
essentially function as "self-contained General Population"(SCGP)
units. they absolutely DO NOT.  CMU inmates receive their  food
identically to inmates in disciplinary segregation.   Served in
segregation trays, cold, with limited food, absent  Food Service
staff oversight, which ALL GP units have.

32.  CMU inmates receive identical recreational, educational, re-
ligious services programs (except television) that inmates   re-
ceive in "disciplinary segregation" at FCI-Terre Haute,  and USP
Marion, where both CMUs are located.  The CMUs are not SCGP  u-
nites, and have 99% less recreational, educational, food service,
religious services programing, that all other GP  prisoners (not

in CMU) receive on a daily basis.  GP inmates receive five days each week access for Recreation Dept., Education Dept., Food Service Dept., Religious Dept., etc. programming overseen by  BOP qualified staff as is mandated and thereby complied with.  CMUs have ZERO staff access or oversight in programs; Nor do CMU inmates receive any legitimate offerings of GP programming.  CMU is like "administrative segregation" for indefinite years, where the inmate gets to, in part, leave his cell, and watch TV.  All is identical to "segregation" NOT GP.

33.  The designation is "NOT non-punitive" because it does affect the length of incarceration, especially now with the "First Step Act", because without access to "ordinary" and  legitimate  programming, RDAP, Life Connections, and additional designated programs, credited in the Act, as are available to all "GP" prisoners for obtaining "Good Conduct Time"(GCT), a CMU prisoner's sentence length is clearly lengthened by being "deprived"  the opportunity for receiving credit for these various  programs  that SHORTEN one's sentenced imprisonment.

34.  The Circuit Court found due process claims of Plaintiffs to be jurisdictionally sound.  Aref appellants challenged as inadequate the procedures used to designate them to the CMUs(emphasis on same claim by Farooque Ahmed herein).

35.  The District Court in the DC Circuit found a prisoner plausibly alleged harsh and atypical conditions because he had  been [segregated] from the GP for over six years after he was formally classified as a terrorist inmate. Royer v Fed. BOP, 933 F. Supp. 2d 170,192(DDC 2013).  The court concluded that even if the conditions alleged were "no more restrictive" than administrative segregation, the complaint should survive because the conditions were permanent and indefinite.

36.  In Aref the BOP submitted into the record specific CMU desination procedures, which are as follows: The CTU "creates"  a "designation packet" that includes a summary of  the  supporting

16

information, a "recommendation" for or against, and  a proposed
NOTICE of Transfer. The packet is sent to the Office of General
Counsel for review for "LEGAL SUFFICIENCY" and then forward  for
the Correctional Programs Division(CPD), and the  Assistant Dir-
ector(AD)/CPD makes his assessment and decision independently.

37.  The BOP told this Court one thing, while existing  law  [18
USC §3621(b)], resolutions [28 CFR §501.3], and BOP Policy, Pro-
gram Statement P5100.08(governed by 18 USC §3621(b)  evidence  a
contrary procedure that the law requires and allows. The alleged
procedure CTU, BOP General Counsel, AD/CPD, etc. are effectuating
is NOT authorized pursuant to existing BOP related  classification,
designation, transfer authorities.

PROCEDURAL HISTORY

38.  Pursuant to existing statutory and regulatory authorities in
force in the District of Columbia, where the U.S. Department of
Justice(DOJ) and U.S. Bureau of Prisons(BOP) principal corporate
offices are located, applicable law is 18 USC §§3621,4001, 4041,
4042,4081, with 4001 being "Limitations on the detention of pri-
soners, and 3621 governing BOP Program Statement P5100.08, which
provides the procedural limitations that relate to any/all class-
ifications, designations, security assignments,  and  otherwise
transfers of BOP prisoners(emphasis on Plaintiff Farooque Ahmed),
the BOP is limited to execution of the procedures authorized un-
der P5100.08, and 28 CFR §§541.10,541.41, when the transfer  or
referral is related to a "control unit", 28 CFR §501.3 addresses
the classification limitations on a terrorist inmate  deemed po-
tentially violent.

39.  Contrary to popular belief of/by/through the BOP, classifi-
cations, designations, transfers, etc. are "limited" to specific
procedures, specific forms, specific DOJ/BOP "authorized"  offi-
cials executing these "official" DOJ/BOP forms, to be endorsed by
other authorized by P5100.08 officials, forwarded to higher up US
Government Executive Branch officials, then sent to DSCC Admini-

17

strator, John O'Brien for him to verify the legal validity of the
classification, transfer, or otherwise, assign any necessary MGTV/
MVED to ensure that the prisoner's security assignment is com-
mensurate with the institution he is being designated for, and
only then, if all ducks are in a row, does the prisoner become le-
gally eligible for that designation.

40. Specifically, 28 CFR, subpart B-CONTROL UNIT PROCEDURES, §§
541.40 Purpose and Scope states in relavent parts, subpart (c) in
an effort for maintaining its safe and orderly environment with-
in its institutions, the BOP operates "control unit programs" in-
tended for placing into a seperate unit those inmates who are un-
able to function in a less restrictive environment without being
a threat to others or to the orderly operation of the institution.
The BOP provides written criteria for the: (1) referral of an in-
mate for possible placement within a control unit; (2) REGULAR
REVIEW OF AN INMATE WHILE HOUSED IN A CONTROL UNIT; subpart (b):
The BOP PROVIDES AN INMATE CONFINED WITHIN A CONTROL UNIT THE OP-
PORTUNITY TO PARTICIPATE IN PROGRAMS AND ACTIVITIES; Cf. §541.41
Institutional Referral: subpart (c) The Warden aka CEO shall sub-
mit a recommeation for placement of the inmate into a control
unit; (b) the Warden/CEO shall consider the following factors in
a recommendation for control unit placement, subpart (7) An in-
mate(emphasis on Plaintiff Farooque Ahmed) may not be considered
solely on the nature of the crime which resulted in that inmates
incarceration, however, the nature of the crime may be consider-
ed in combination with other factors, as described in paragraph
(b) of this section(emphasis)is on Plaintiff having cased ZERO of
the qualifying "incidents" required to place him in any "control
unit".

### PROCEDURAL BASELINES FOR "TYPICAL"
### Administrative Detention/Control Unit Placement

41. The D.C. Circuit Court of Appeals, Aref v Lynch, uses a
CMU-like baseline for the "typical or ordinary" by comparing it

to administrative detention.  The D.C. Circuit policy further spe-
cifies that the baseline similarities be compared to administra-
tive detention at the institution where the CMU prisoner is  de-
tained.

42.  Rachel Meeropol, Center for Constitutional Rights, etc.,sold
out all CMU prisoners by fraudulantly leading the Appeals  Court
in Aref  v  Lynch to believe that CMUs are like   self-contained
General Population "control" units, that have all the privileges
of GP except for communication matters.  That version is patent-
ly false and Meeropol, et al., were told that by over 80% of CMU
prisoners in years of letters for CCR about all of the  depriva-
tions.

43.  CMU prisoners have ZERO BOP staff support from  the  educa-
cational dept., recreational dept., food service dept., religious
services dept., et al.  The only staff that are in CMU  providing
EQUIVALENT TO FCI-Terre Haute or USP Marion, where the  CMUs  are
located,  GP PROGRAMMING OPPORTUNITIES are "security   related".
CMUs have no legitimate educational opportunities.  The "teachers"
of the faux classes are uneducated, unqualified inamtes, not the
certified BOP staff teachers GP is offered.  GP's   recreational
opportunities are as follows: a large (immense) open air,  grass
field where FCI-Terre Haute GP inmates may play soccer, football,
walk or run the track, play softball, on an official field  with
bats and gloves, teams and leagues for all sports. GP inmates are
offered large basketball and tennis courts; bowling;   minature
golf; free weights, large weight pile, benches, squat racks, etc.
on an inside full court; no matter what the whether is,   or time
of year.  GP inmates have literally "thousands" of DVDs to select
from daily in their movie program; GP has a CD driven music pro-
gram with thousands of CDs to select from; GP has 7  days  each
week access for recreation staff who asure GP EQUAL ACCESS for re-
quired programming; GP has at least 10 DVD players,  and 50 plus
TVs, etc., etc., etc. Per CMU policy, and per  Rachel Meeropol's

fraud, as well as the BOP's, CTU, etc. the CMUs allegedly receive ALL, EQUAL, recreational opportunities. Per CMU policy inmates in CMU receive the same, EQUAL, food service treatment,  privilege, as FCI-TerreHaute GP inmates.

44.  Plaintiff could cite every last programming dept., but keeps it simple with the above three references.

45.  Plaintiff receives 100% IDENTICAL food service  considerations as those FCI Terre Haute inmates who are in  DISCIPLINARY SEGREGATION.  Hence, Plaintiff is fed luke warm, at best, minimal portions, of a meal thrown into a disciplinary segregation  food tray.  No fork, spoon, or cup.  No food service "oversight",  as is required to ensure the food is hot, portions are proper,  the meal meets  National menu quality and standards.

46.  Plaintiff receives ZERO educational opportunities, nor RDAP drug treatment, nor any programs, which offer GCT credit,  which allows one to acquire reduction of sentence. Hence, CMU placement "DOES" affect a prisoner's length of sentence.

47.  Plaintiff's recreational opportunities are limited  to  TV, walking in small circles in administrative segregation pens, and treadmill or stationary bike.  There is NO grass, NO clear open sky, NO sports(unless one wants to risk injury, severe health risks, on concrete with rusty metal steel cages a few feet from one's ac- tivity), NO gym, one DVD TV with less than ten movies,  all  of which have been seen dozens of times. Plaintiff is  deprived  of 99% of GP recreational opportunities, and NO staff of any  dept. are ever present for more than 10 minutes each week.   That's CMU "GP".  Absolutely ATYPICAL and DEPRIVATIONAL.

PLAINTIFF RESPECTFULLY DEMANDS A TRIAL BY JURY
ENTITLED RELIEF

WHEREFORE, Plaintiff, in light of the foregoing respectfully requests the following relief from the Hon. Court:

a.  In light of the Administrative Procedures' Act, 5 USC §702: That the Court subpoena defendants records into court for review, which are relevant to any/all peculiar aspects of the classification designation, security assignment,  and otherwise transfer to, placement in, the CMU of  Plaintiff; and,

b.  Then review those "transfer" documents, and  determine  if they are in compliance with P5100.08, and all other authorities in force in the District; and,

c.  Then issue an Order of Declaratory Judgment either declaring said transfer[Form 324 Code] documents, and the CMU transfer itself, complies with or circumvents or violates  P5100.08 relivant classification authorities; and,

d.  Also, review Aref, Royer, etc. determinations established by D.C. Courts, and Declare by Order that Plaintiff is entitled to the due process those cases grant him, and is entitled the same relief Royer and "ALL" Aref Plaintiffs received, which was a release out of CMU, with this Plaintiff  to be transferred via injunctive relief Order in compliance  with P5100.08, to an institution commensurate with his relative 8 points "low" security assignment; and,

e.  Pursuant to 28 USC §1331, the Plaintiff simply requests injunctive relief, or otherwise remedy, equivalent to the substantive and procedural due process provided for in  Aref, Royer, and otherwise D.C. Circuit holdings, which are binding for this action; and,

f.  Such further relief as this Hon. Court deems essential  for justice.

COMPLAINT presented this          28 day of February  2019,
by:

FAROOQUE AHMED, Plaintiff
77315-083

28th day of March, 2019

COMPLAINT presented this

by:

FAROOQUE AHMED, Plaintiff
77315-083

22

E

U.S. Department of Justice
Federal Bureau of Prisons
North Central Regional Office

**Regional Administrative Remedy Appeal**
**Part B - Response**

**Administrative Remedy Number:**   940508-R1

This is in response to your Regional Administrative Remedy Appeal received in this office on
June 19, 2018, in which you challenge your designation to the Communications Management Unit
(CMU).   Specifically, you claim it is unjust and a violation of due process.

We have reviewed your appeal and the Warden's response dated June 6, 2018.   A review of your
request reveals you were designated to the CMU due to your conduct while incarcerated within the
Bureau of Prisons.   Placement in this unit was to allow for greater management of your
communications with persons in the community through complete monitoring of telephone use, written
correspondence, electronic messaging, and visiting.   Bureau of Prisons' Program Statement 5100.08,
<u>Inmate Security Designation and Custody Classification</u>, states, "Each inmate will be placed in a facility
commensurate with their security and program needs through an objective and consistent system of
classification which also allows staff to exercise their professional judgment; and, staff will
systematically and objectively review an inmate's classification making the environment in which they
are housed safer for both inmates and staff while protecting the public from undue risk."   Based on this
information, your transfer to the CMU for greater communication management was necessary for the
safe, secure, and orderly operation of Bureau institutions, as well as protection of the public.   A due
process hearing is not required for inmates to be placed in the CMU.   Your case will continue to be
reviewed during each Program Review conducted by your Unit Team; however, you are deemed to be
appropriately designated at this time.

Based on the above information, this response to your Regional Administrative Remedy Appeal is for
informational purposes only.

If you are dissatisfied with this response, you may appeal to the Office of General Counsel, Federal
Bureau of Prisons, 320 First Street, NW, Washington, DC 20534.   Your appeal must be received in the
Office of General Counsel within 30 days from the date of this response.

_6-29-18_
Date

Sara M. Revell, Regional Director

U.S. DEPARTMENT OF JUSTICE

Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

---

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: | Facoque, Anaad | 77315-083 | D/Unit-CMU | FCI Terre Haute
--- | --- | --- | --- | ---
| **LAST NAME, FIRST, MIDDLE INITIAL** | **REG. NO.** | **UNIT** | **INSTITUTION**

**Part A– INMATE REQUEST**

This BP-9 is challenging my placement in the CMU. The Notice To Inmate Of transfer to CMU is used to give NOTICE after the transfer to the CMU. The Legal definition for "NOTICE" is a warning, of intent; any intent can be duly challenged, and due process protections controls. I was given the NOTICE after my arrival to the CMU, I was not given any due process to challenge the intent to transfer me to the CMU, which violates my rights.

The reason given for my CMU placement is stated to deter my continued attempts of using Inmate communications to convey threats. According to BOP Policy, there are only three ways of Inmate communications, mail, electronic messaging, and telephone, there has not been any evidence provided that I have attempted to use either of them to convey threats. I did not receive an incident report for this alleged behavior, so this is a clear fabrication. The decision to place me in the CMU is based on a arbitrary, discriminatory foundation. There is no evidence to support such allegations. If the use of confidential info.

Next Page...

4-22-18

**DATE**                                         **SIGNATURE OF REQUESTER**

**Part B– RESPONSE**

---

**DATE**                                         **WARDEN OR REGIONAL DIRECTOR**

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

SECOND COPY: RETURN TO INMATE

CASE NUMBER: _____

CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____

| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION

SUBJECT: _____

---

**DATE**        **PRINTED ON RECYCLED PAPER**        **RECIPIENT'S SIGNATURE (STAFF MEMBER)**

BP–229(13)
APRIL 1982

USP LVN

has been used in the alleged SIS investigation, what was used to support such information as Being credible enough to transfer me to the CMU, but not credible enough to issue an incident report?  If confidential information assisted the SIS with the reccommendation to tranfer me to the CMU, and it was deemed reliable, the first step taken should haBe been to issue me a incident report.

The misuse of Inmate communications must be supported by facts, if my transfer to the CMU is to deter me from continued attempts to violate Inmate communi-cations, policy provides that an Inmate can Be issued an incident report for attempt to comitt an act, or assisting someone with comitting an act.  I did not receive a incident report for attempting to do anything, so how can a need to deter me from continued attempts be supported?

To be truthful, a clear defamation of my character is a huge concern, I am being called an extremist because I do not agree with someone, is it a crime to disagree with others?  Calling me an extremist is no different than me being called a terrorist.  This is very/disrespectful, as well as unsupported. Civil complaints in the D.C. has stated that calling someone a terrorist or labeling them as such is a clear violation.  The word extremist is just a proper way of calling me a terrorist, because you are using the fact that I am a Muslim to call me an extremist.  What is Being used to identify me as a globally inspired Islamic extremist?  You are clearly reaching far beyond the professional realm that you are to follow, by calling me such a defamed name.  Although there is no evidence to support such accusations made by the BOP, is it a crime to not like a particular country?  Or is it that being a Muslim is a crime?

Relief Sought:  I am requesting to be provided with evidence of my attempts to use Inmate communications to convey threats.  I am also requesting what evidence was used to defame my character with such title as an EXTREMIST. I am requesting to be transferred out of the CMU, if no evidence can be provided to support such allegations.

Ahmed, Fariduz #77315-0--



Remedy No.:  940508-F1                                      FCC Terre Haute, IN

### PART B - RESPONSE

This is in response to your Administrative Remedy receipted May 15, 2018, in which you allege you were not afforded due process in your placement in the Communication Management Unit (CMU) which has violated your rights. For relief, you request that you be transferred out of the CMU if no evidence can be provided to support placement in the unit.

A review of your request reveals that you are currently in a general population housing unit with 100% communication monitoring. Upon a multi-level review, it was determined that your designation to the CMU was and still is appropriate. You will continue to be reviewed every six months with your regularly scheduled Program Review.

Therefore, your Request for Administrative Remedy is for informational purposes only.

If you are dissatisfied with this response, you may appeal to the Regional Director, North Central Regional Office, Federal Bureau of Prisons, 400 State Avenue, Suite 800, Kansas City, Kansas 66101. Your appeal must be received within 20 calendar days of the date of this response.


Jun 6 2018
Date                                        J. R. Bell, Warden

Exhabit



U.S. Department of Justice

Federal Bureau of Prisons

*FCC Terre Haute*

*Terre Haute, Indiana*

November 30, 2018

FROM:        D. Thomas, CMU Unit Manager

SUBJECT:     Communication Management Unit (CMU) Review
             Ahmed, Farooque, Reg. No.: 77315-083

In accordance with THX-5321.07B, <u>Operation and Security of the Communication Management Unit (D-Unit, FCI Terre Haute)</u>, you have been reviewed for continued CMU designation.

A review of your current offense of conviction, offense conduct, activity while incarcerated, misuse/abuse of communication and any other evidence of a potential threat to the safe, secure and orderly operation of prison facilities and the public was conducted.  Based on this review, as well as sound correctional judgment and security threat management practices, it has been deemed that your CMU designation is appropriate. Therefore, a recommendation for transfer will not be made at this review.

You may appeal this decision, or any conditions of your confinement, through the Bureau's Administrative Remedy Program, 28 C.F.R. § 542.10 through 542.19, and corresponding policy.  A member of your Unit Team will provide you with the necessary form upon request.

Exhibit

NOTICE TO INMATE F TRANSFER TO COMMUNICATION ANAGEMENT UNIT

U.S. DEPARTMENT OF JUSTICE                                  FEDERAL BUREAU OF PRISONS

| Inmate Name (Last, First, Middle): AHMED, Farooque | Register Number: 77315-083 |
|---|---|
| Warden (print and signature): J. R. Bell, Warden | Institution: FCI Terre Haute |

NOTICE: This notice informs you of your transfer to a Federal Bureau of Prisons (Bureau) facility that allows greater management of your communication with persons in the community through more effective monitoring of your telephone use, written correspondence, and visiting.  Your communication by these methods may be limited as necessary to allow effective monitoring.  Your general conditions of confinement in this unit may also be restricted as necessary to provide greater management of your communications.  Your transfer to this unit, by itself, will have no effect on the length of your incarceration.  You will continue to earn good-conduct sentence credit in accordance with Bureau policy.

Your transfer to this facility under these conditions is based on the following specific information:  You have been identified as a globally inspired Islamic extremist.  You continue to espouse hatred towards the United States, non-Muslims and others who are not aligned with your violent extremist beliefs.

On March 31, 2017, you received a Closer Supervision transfer from FCI Ashland to FCI Loretto, following the completion of an SIS Investigation.  SIS staff concluded that you were likely involved in an altercation with another inmate in your housing unit.  The investigation also suggested that you attempted to gain support from other Muslim inmates to retaliate against the other inmate.  As a result, you received a transfer to another facility based on your attempt to rally/encourage others.

On January 25, 2018, the SIS Office at FCI Loretto completed an investigation and determined that you actively engaged in recruitment efforts in an attempt to radicalize and mobilize others into action upon release from custody.  It has also been determined that you have not changed or altered your ideology or beliefs while incarcerated.

To deter your continued attempts of using inmate communications to convey threats to injure and/or kill civilians and members of US Military; it is recommended that you be placed in a Communications Management Unit (CMU) for increased monitoring of your communications to protect the safety, security, and good order of BOP institutions, government officials, and the public.

Based on this information, your transfer to this facility for greater communication management is necessary to the safe, secure, and orderly operation of Bureau institutions, or protection of the public.  Your continued designation to this facility will be reviewed regularly by your Unit Team under circumstances providing you notice and an opportunity to be heard, in accordance with the Bureau=s policy on Classification and Program Review of Inmates.

OPPORTUNITY TO APPEAL TRANSFER DECISION – You may appeal this transfer decision, or any conditions of your confinement, through the Bureau=s Administrative Remedy Program, 28 C.F.R. '' 542.10 through 542.19, and corresponding policy.  A member of your Unit Team will provide you with the necessary form upon request.

INSTRUCTIONS TO STAFF – Provide the inmate a copy of this form and complete the following information documenting delivery.

| Staff Member Name and Position (printed): D. Thomas, Unit Manager | Staff Member (signature): | Date Issued: 4.9.18 |
|---|---|---|

F. Lara, Assistant Director, Correctional Programs Division
Acting AD   3/16/18



## U.S. Department of Justice
Federal Bureau of Prisons

*Federal Correctional Complex*
*Terre Haute, Indiana*

☐ Institution   ☐ Region   ☑ Central

_CMU_ Unit

# Receipt of
## Administrative Remedy

Inmate Name: _Ahmed, Farooque_   Reg. No.: _77315-083_

Administrative Remedy No.: _940508-41_

Received on this ____6____ day of _December_, 2018.

_____ /CSW_
Signature/Title of Staff

If Administrative Remedy is allowed to be resubmitted, it is due to a Unit Team staff member by _____, 2018.

Edits received by Unit Team on this _____ day of _____, 2018.

_____
Signature/Title of Staff

## Inmate Copy

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

From: Ahmed, Farooque  77315-083  CMU  THA
LAST NAME, FIRST, MIDDLE INITIAL  REG. NO.  UNIT  INSTITUTION

**Part A—REASON FOR APPEAL**  I filed a BP-10 to othe Region on 6-12-18 that was responded to on 6-29-18 and I received the response on 9-28-18. The Region denied my BP-10 stating that due process is not something that I am entitled to prior to being placed in the CMU. Instead of responding to my request for proof of the evidence used to place me in the CMU, the Region basically stated the Program Statement 5100.08. I was in a Institution commensurate with my security and programs needs, however, for some undisclosed reason I was removed from that Institution and sent to the CMU which houses Inmates with Max custody, instead of allowing me to remain in a Institution that meets my scored security level.

Although it is said that placement in a CMU is analogous to a classification, it is being done on a selective basis, and is indefinate and possibly permanent. In regular Institutions, indefinite stay is not possible because a change in the scored security level changes periodically and inmates are transferred to the appropriate Institution that meets their scored security level. In the CMU, a change in scored security level means nothing because you will remain in this
Next Page.....

10-01-18
DATE

SIGNATURE OF REQUESTER

**Part B—RESPONSE**

RECEIVED
OCT 1 0 2018
Administrative Remedy Section
Federal Bureau of Prisons

DATE

ORIGINAL: RETURN TO INMATE

GENERAL COUNSEL
CASE NUMBER: 940508-A1

**Part C—RECEIPT**

CASE NUMBER: _____

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL  REG. NO.  UNIT  INSTITUTION

SUBJECT: _____

DATE  SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

USP LVN



**U.S. Department of Justice**
Federal Bureau of Prisons

*Federal Correctional Complex*
*Terre Haute, Indiana*

☐ Institution   ☐ Region   ☑ Central

_CMU_ Unit

# Receipt of
# Administrative Remedy

Inmate Name: _Ahmed, Farooque_   Reg. No.: _77315-053_

Administrative Remedy No.: _940508-A1_

Received on this ___6___ day of ___DECEMBER___, 2018.

_____
Signature/Title of Staff

If Administrative Remedy is allowed to be resubmitted, it is due to a Unit Team staff member by _____, 2018.

Edits received by Unit Team on this _____ day of _____, 2018.

_____
Signature/Title of Staff

## Inmate Copy

U.S. Department of Justice

Federal Bureau of Prisons

Central Office Administrative Remedy Appeal

F

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

From: Ahmed, Farooque     77315-083     CMU     THA
     LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

**Part A—REASON FOR APPEAL**    I filed a BP-10 to othe Region on 6-12-18 that was responded to on 6-29-18 and I received the response on 9-28-18. The Region denied my BP-10 stating that due process is not something that I am entitled to prior to being placed in the CMU. Instead of responding to my request for proof of the evidence used to place me in the CMU, the Region basically stated the Program Statement 5100.08. I was in a Institution commensurate with my security and programs needs, however, for some undisclosed reason I was removed from that Institution and sent to the CMU which houses Inmates with Max custody, instead of allowing me to remain in a Institution that meets my scored security level.

Although it is said that placement in a CMU is analogous to a classification, it is being done on a selective basis, and is indefinate and possibly permanent. In regular Institutions, indefinite stay is not possible because a change in the scored security level changes periodically and Inmates are transferred to the appropriate Institution that meets their scored security level. In the CMU, a change in scored security level means nothing because you will remain in this
           Next Page.....

10-01-18
DATE                    SIGNATURE OF REQUESTER

**Part B—RESPONSE**

RECEIVED

OCT 1 0 2018

Administrative Remedy Section
Federal Bureau of Prisons

_____
DATE

ORIGINAL: RETURN TO INMATE

GENERAL COUNSEL

CASE NUMBER: 940508-A1

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Part C—RECEIPT**

CASE NUMBER: _____

Return to: _____
     LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

SUBJECT: _____

_____
DATE        Printed on Recycled Paper      SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

BP-231(13)
APRIL 1982

USP LVN

high level security Unit.  There has to be a minimum of three to four Officers at all times in the CMU, or Inmates will not be allowed out of their cells. On a low custody, medium custody, and even high custody Unit on a normal compound there is only one Officer required for up to 150 Inmates.

What is the evidence used to support placing me in a Maximum Security Unit?

Contrary to the BOP's belief, I have a liberty interest in avoiding transfer to the CMU, according to the Constitution, I cannot be denied life, liberty, or property without due process.
The Region has stated that I am not entitled to a due process hearing before being sent to the CMU, The Court of Appeals for the DC Circuit has clearly stated that Inmates have a liberty interest in avoiding transfer to the CMU, the BOP believes that giving me a notice once I arrive to the CMU is due process but due process in avoiding transfer to the CMU, would require a process due before placement in the CMU, not after placement in the CMU.
Also, without mention of the so called evidence used to place me in the CMU, supports the finding of a decision based on arbitrary decison making, and also supports issues of discrimination.
The making of Administrative decisions and providing access to housing and programs cannot be done in a discriminatory fashion.  It can be easily said that because I am a Muslim with a case that the United States created, is the sole reason that I have been placed in the CMU, and this is clear supporting facts for a claim of discrimination.
I do not have a incident report for violating any communications priveledges, so what is the need for greater communication management?  Without clear and supportive evidence of me violating any communications priveledges, the decision to place me in the CMU meets the use of clear arbitrary and discriminatory decision making.

REMEDY:   I am requesting to be removed from the CMU, and also to be provided with the reason and the evidence to support the reason for placing me in the CMU.  I have only been provided with a blanket statement that is used for all Inmates placed in the CMU, what is the reason tailored to me being placed in the CMU.

Ahmed, Farooque #77315-083

**Administrative Remedy No. 940508-A1**
**Part B - Response**


This is in response to your Central Office Administrative Remedy
Appeal where you challenge your placement in the Communication
Management Unit (CMU) at USP Terre Haute.  You state this decision
is arbitrary, discriminatory and violates your due process rights.
You request to be removed from the CMU, and to be provided with the
reason and evidence to support your CMU placement.

A review revealed, in March 201, you were reviewed and approved for
transfer to and participation in the CMU.  The Warden and Regional
Director correctly advised you of the basis for your designation
and continued placement in the CMU program.  We concur that your
CMU placement remains appropriate as you continue to require
heightened monitoring.  Staff will continue to monitor and
periodically review your case for appropriate placement at your
scheduled program reviews.  We find you have received proper notice
and explanation of your CMU designation.  There is no evidence of
discrimination or indication your due process rights have been
violated.

Accordingly, your appeal is denied.

_10/31/18_____

Date

_____
Ian Connors, Administrator
National Inmate Appeals

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

ß

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

| From: | ASHED, FAROUDE | 77315-083 | CMU/PHA | FCI/PHA |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A - REASON FOR APPEAL**   I filed a BP-9 concerning my placement in the CMU and the response did not address the actual complaint, and instead provided a patened response that is given to every inmate that files on this issue. The Notice of transfer to the CMU, stated in part that I was transferred from FCI Ashland to FCI Loretto following an SIS investigation into me rallying or encouraging others to retaliate for an alleged altercation. I did not receive a incident report for such behavior, so therefore, it must have been unfounded. The notice also states that I was transferred from FCI Loretto for engaging in recruitment efforts and attempting to radicalize. I did not receive an incident report for this alleged behavior, so it must have also been unfounded. Clearly the decision to send me to the CMU has been based on a complete arbitrary and capricious finding. One's judgment based on his preference or whim further violates my due process. It has yet to be decided by the Court as to what process is due, but, the process of personal preference surely cannot be acceptible. I prefer to not be in the CMU, how does the preference of one override the preference of another? I am sure that some type of evidence to support the preference of someone would assist in their preference being considered. The SIS preference to refer me to the CMU is not supported by any evidence other than the possibility of confidential informants.  As clearly stated in the NEXT PAGE.......

_____   _____
DATE                    SIGNATURE OF REQUESTER

**Part B - RESPONSE**

_____   _____
DATE                    REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

SECOND COPY: RETURN TO INMATE

CASE NUMBER: _____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
          LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

_____   _____
DATE                    SIGNATURE, RECIPIENT OF REGIONAL APPEAL

USP LVN

BP-230(13)
JUNE 2002

E

BOP Disciplinary Policy, the greater weight of evidence shall be more than just a number of witnesses.  Lets say that there were any number of witnesses, what other evidence is there to support what may have been said?  Arbitrary is legally defined as one's judgment based on his preference, how does an Inmate win a preference issue against a Staff Member?  It can be easily weighed by considering the weight of evidence.  I am saying that I did not violate any rules or regulations concerning issues of communication to warrant being placed in the CMU, my preference is to continue claiming my innocence.  The preference of the SIS to send me to the CMU must be supported by the greater weight of the evidence to prove that I am actually guilty of what I am being accused of.  Accusations have never been enough to conclude that someone is guilty of the accusations, although in the BOP things are done on a standard of reasonable probability, and not a reasonable doubt standard,  Reasonable is legally quoted at being able to reason, fair, just, sensible and not excessive. Probability is legally quoted at being probable, likelihood, something probable.  My charges of incarceration would make a an allegation seem probable, or having some likelihood, however, with no direct evidence of the allegations made, someone should have been able to reason, and act with a fair and just decision to not agree with placement in the CMU.  It is not sensible, but very excessive to punish someone without evidence to even support a reasonable probability finding.  Obviously, the arbitrary preference of the SIS, CTU and whoever else agreed with such placement, offers me no process due other than the fact that I can file to the same Authority that agreed to place me in the CMU, and receive the same arbitrary preference that has violated my rights.

To issue a response to a BP-9 for informational purposes only, is not a response to the complaint filed.  I was served with the exact information in the response upon my arrival to the CMU.  A failure to respond is an admittance of wrongdoing.

My issue remain:  I have been denied due process, and no evidence to support CMU placement has been provided.

Relief Sought:  I am requesting to be removed from the CMU if no evidence to support such placement can be provided.

AHMED, FAROOQUE #77315-083

See: ATTACHED EXHIBIT- Notice Of Transfer to the CMU

Farooque Ahmed
#77315-083
PO Box 33
Terre Haute, IN 47808

15 March 2019

Angela D. Caesar
Clerk of Court
United States District Court
E. Barrett Prettyman U.S. Courthouse
333 Constitution Avenue, NW
Washington, D.C.  20001 2866

Re:   Enclosed Complaint for filing and proceedings

Hon Clerk:

  Of necessity I seek your professional assistance for  filing
my enclosed "Complaint".  (enclosed)

  Initially, as I am confined in the CMU at FCI Terre Haute, I
need assistance with the following:

- Filing of my Complaint In Forma Pauperis;

- Direction and Assistance with Summons and service of the
  Summons and Complaint;

- Such further assistance as you deem necessary for  com-
  pliance with process in and through your Court.

Thank you for your much needed assistance in this process.

Sincerely,

Farooque Ahmed

cc.   File


RECEIVED
Mail Room

APR 2 2 2019

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

FROM:

FAROOQUE AHMED

# 77315-083

Fedral Correctional

Institution PO Box 33

Terre Haute, IN 47808

TO:

ANGela J

Clerek

United Sl

E, Barret

333 Cn

Washins



PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT.
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

CERTIFIED MAIL®

7018 2290 0000 4141 0465

Utility Mailer
10 1/2" x 16"



U.S. POSTAGE PAID
FCM LG ENV
STATEN ISLAND, NY
10303
APR 18, 19
AMOUNT

**$5.25**

R2304M112339-4

1000          20001

, Caesar
f Court
ales Distt Court-
Prettyman U-S Courthouse
stitution Ave, NW
gton, D. c 20001, 2866