UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| FAROOQUE AHMED, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>FEDERAL BUREAU OF PRISONS, et al., )<br>)<br>Defendants. )<br>) | Civil Action No. 19-1189 (CJN) |

## MOTION TO DISMISS

Defendants, the Federal Bureau of Prisons and others, respectfully move to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(6). A memorandum of law in support of this motion is attached. A proposed order and table of authorities are enclosed herewith.

Dated: May 18, 2020

Respectfully submitted,

TIMOTHY J. SHEA, D.C. Bar #437437
United States Attorney for the District of Columbia

DANIEL F. VAN HORN, D.C. Bar #924092
Chief, Civil Division

  /s/ *Alan Burch*
ALAN BURCH, D.C. Bar #470655
Assistant United States Attorney
United States Attorney's Office, Civil Division
555 Fourth St., NW
Washington, DC 20530
(202) 252-2550, alan.burch@usdoj.gov

*Counsel for Defendants*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FAROOQUE AHMED, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 19-1189 (CJN) |
| ) | |
| FEDERAL BUREAU OF PRISONS, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Defendants Federal Bureau of Prisons ("BOP"), Frank Lara, Guy Pagli, Ian Connors, Sara Revell, and J.R. Bell (the "Individual Defendants"), by and through the undersigned counsel, hereby respectfully move for dismissal of this action pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Plaintiff is a pro se prisoner who claims he was improperly housed in a Communications Management Unit ("CMU"). Plaintiff's constitutional claims fail as a matter of law because he received all of the minimal process to which he was entitled. Further, Plaintiff is statutorily barred from bringing claims under the Administrative Procedure Act ("APA") to challenge his placement in the CMU.

## BACKGROUND

### I. Plaintiff's Complaint

Plaintiff is serving a 276-months sentence with a 50-year term of supervised release for Attempting to Provide Material Support to a Foreign Terrorist Organization, and Collecting Information for a Terrorist Attack on a Transit Facility. Plaintiff currently has a projected release date of November 9, 2030, via Good Conduct Time release. Plaintiff is currently

incarcerated at the Federal Correctional Institution in Terre Haute, Indiana ("FCI Terre Haute"), and has been confined therein since April 9, 2018.

The Complaint filed on April 22, 2019, identified as defendants BOP; Frank Lara,[1] the Assistant Director of Correctional Programs Division; Guy Pagli, the Chief of the Counter Terrorist Unit; Ian Connors, the National Inmate Appeals Administrator; Sara Revell,[2] the Regional Director for the North Central Regional Office; and J.R. Bell,[3] the Warden at FCI Terre Haute.

Undersigned counsel filed his appearance on December 27, 2019 (ECF No. 9), and Plaintiff filed a response (ECF No. 10) to the Notice of Appearance in which he asked that Counsel for Defendants specify which Defendants he represents (ECF No. 10).  Undersigned counsel represents BOP and the five named Individual Defendants in their official capacities only.  While, Plaintiff's Complaint occasionally asserts that he is suing the Individual Defendants "in their official and individual capacities," *e.g.,* Compl. ¶ 6, the Complaint does not describe any individual capacity claims nor does it cite *Bivens* or any other source of law on which such claims could be based.  Moreover, the Complaint seeks only injunctive relief, which would be possible to effect against the Individual Defendants only in their official capacities (i.e., the Individual Defendants in their individual capacities have no wherewithal to direct the

---

[1] Frank Lara retired in August 2018, prior to the filing of this Complaint.  Prior to his retirement Frank Lara was employed in the Bureau of Prisons' Central Office located in Washington, D.C.

[2] Sara Revell also retired in August 2018, prior to the filing of this Complaint.  Prior to her retirement Defendant Revell was the Regional Director for the North Central Regional Office in Kansas City, Kansas.

[3] J.R. Bell is currently the Warden at the Federal Correctional Institution in Cumberland, Maryland, and has been since April 2019.  Prior to that Defendant Bell was the Warden at FCI Terre Haute, Indiana.

operations of BOP).   Lastly, Plaintiff has not requested summonses appropriate to serve the Individual Defendants in their individual capacities as would be required by Rule 4(i)(3).   Accordingly, the United States has interpreted Plaintiff's complaint to raise only official capacity claims, and the named individual Defendants appear here only in their official capacities.

Plaintiff brings this action alleging he was denied due process and equal protection of the law when he was returned to the CMU in April 2018, a designation Plaintiff claims is inconsistent with his classification level.   Plaintiff also alleges that Defendants failed to provide him notice of the factual basis for his return to CMU placement.   Plaintiff asserts he was entitled to notice of the action and "some kind of opportunity for being heard before final deprivation."   Plaintiff also claims his placement in CMU was fraudulently fabricated and processed.   Lastly, Plaintiff asserts statutory authority for review pursuant to the APA.

## II.     Communications Management Unit

The CMU was created in response to a September 2006 United States Department of Justice, Office of the Inspector General ("OIG") report, which reviewed the effectiveness of BOP's monitoring procedures for high-risk inmates.   The report revealed that, while incarcerated at BOP's most restrictive prison, three convicted terrorists involved in the first World Trade Center bombing had been able to correspond with extremists in Spain, including those with links to the March 2004 Madrid train bombings.   BOP recognized the need for new procedures to ensure that high-risk inmates could not use approved communication methods to further illicit criminal activities while incarcerated, and established CMUs.   One CMU was established at the Federal Correctional Institution in Terre Haute, Indiana, and the other at the United States Penitentiary in Marion, Illinois, in 2006 and 2008 respectively.

CMUs were established to house inmates who, due to their current offense of conviction, offense conduct, or other verified information, require increased monitoring of communication between inmates and persons in the community in order to protect the safety, security, and orderly operation of [BOP] facilities, and protect the public. 28 C.F.R. § 540.200(c).

BOP had recognized that without constant monitoring, it is difficult to police inmate communication in the open general population setting because it is harder to detect activities such as inmates sending correspondence under another's name. Given these concerns, CMU inmates are separated from other general population inmates, thereby preventing the inmates in the CMU from evading monitoring controls. Aside from that distinction, they are confined in housing units that are designed and functions like a general population unit.

### A.     Communications Restrictions

The CMU is a self-contained general population housing unit located within a larger BOP facility and was created to provide an inmate housing environment that would allow BOP staff to more effectively monitor communications involving certain high-risk inmates. The inmates "reside, eat, and participate in all educational, recreational, religious, visiting, unit management, and work programming" within the confines of the CMU unit itself. 28 C.F.R. § 540.200(b), also see generally https://www.bop.gov/policy/progstat/5214_002.pdf. CMU inmates are permitted less time to talk on the phone and to visit than inmates in a non-CMU general population setting, but still have ample opportunities to communicate. For example, CMU inmates are permitted to make two 15-minute social telephone calls per week for a total of 120 minutes every four weeks, whereas non-CMU general population inmates typically receive 300 minutes of social telephone time per month, contrast with inmates in administrative detention who typically receive one 15-minute social call every 30 days.

5

Like all general population inmates, other than at night and during security checks, CMU inmates are not confined to their cells and have access to the common areas for approximately 15 hours a day.[4]  But aside from the enhanced monitoring of their outgoing and incoming communications, inmates assigned to the CMU are otherwise similarly situated to inmates in the general prison population.  Although they do not interact with inmates outside the unit, CMU residents are permitted to interact with each another as they participate in programming within the unit.

Visitations are also non-contact via secured partitioned rooms and conversations via telephone.  Non-contact visits make it easier for BOP personnel to monitor, detect and control communications that pose a threat to security.  The conversations can be live-monitored remotely by trained counter-terrorism personnel and can be quickly terminated before a prohibited message is communicated, as well as permit recording of the conversation for later intelligence analysis.

CMU inmates have access to social correspondence via both the U.S. mail and email. While all social correspondence is reviewed and screened before it is received by the inmate and before it is sent to the recipient, there are no general restrictions on the volume of such correspondence.  That said, the Warden has discretion to limit the amount of correspondence if warranted.

---

[4]  At FCI Terre Haute, CMU inmates are free to leave their cell and have access to the common areas typically from 6:00 am to approximately 3:45 pm when they return to their cell for the 4 pm inmate count; and then again after institutional count is completed which is approximately 4:45 pm to approximately 9:15 pm when they return to their cell for the 9:30 pm count and for the remainder of the evening.

### B. CMU Placement Eligibility Criteria

Inmates may be designated to the CMU if evidence of the following criteria exists:

(i) The inmate's current offense(s) of conviction, or offense conduct, included association, communication, or involvement, related to international or domestic terrorism;

(ii) The inmate's current offense(s) of conviction, offense conduct, or activity while incarcerated, indicates a substantial likelihood that the inmate will encourage, coordinate, facilitate, or otherwise act in furtherance of illegal activity through communication with persons in the community;

(iii) The inmate has attempted, or indicates a substantial likelihood that the inmate will contact victims of the inmate's current offense(s) of conviction;

(iv) The inmate committed prohibited activity related to misuse or abuse of approved communication methods while incarcerated; or

(v) There is any other substantiated/credible evidence of a potential threat to the safe, secure, and orderly operation of prison facilities, or protection of the public, as a result of the inmate's communication with persons in the community.

28 C.F.R. § 540.201.

Inmates who might qualify for placement in the CMU are referred to the BOP's Counter-Terrorism Unit ("CTU"). CTU employees review and consider many sources of information about the inmate, including the Pre-Sentence Investigation Report, the sentencing court's Statement of Reasons, and any reports relating to communication-related misconduct. They then forward the referral, the supporting documentation, and their recommendation to the Office of General Counsel, which performs its own review and makes its own recommendation. Finally, CTU forwards the packet and all recommendations to the Assistant Director of Correctional Programs Division, who then determines, based on a review of the evidence, whether the inmate's designation to a CMU is "necessary to ensure the safety, security, and orderly operation of correctional facilities, or protection of the public." In this instance, Plaintiff's redesignation

to the CMU was approved by the Acting Assistant Director of Correctional Programs Division on behalf of Frank Lara.

Upon their arrival at a CMU, inmates receive a written notice that outlines the reasons for their placement. The notice advises inmates that their continued designation to the CMU will be reviewed regularly by the inmate's Unit Team "under circumstances providing the inmate notice and an opportunity to be heard," and that they may challenge their designation to the CMU or lodge any other complaints regarding their conditions of confinement through the Administrative Remedy Program. Inmates are also advised that placement in the CMU does not affect the length of their sentence or impede their ability to earn good-time credit.

### C. Plaintiff's CMU placement

Plaintiff was committed to the custody of the Federal Bureau of Prisons on June 29, 2011, and arrived at FCI Terre Haute CMU for service of his sentence. He was placed in the CMU based on his terrorist convictions and offense history. *See* Exhibit F to Complaint (ECF No. 1 at 29 of 40) (Notice to Inmate of Transfer to CMU). Because Plaintiff did not incur any communications-related incident reports and did not exhibit behavior demonstrating his attempt to circumvent communication monitoring procedures, in December 2015 he was recommended and approved for CMU step-down. Plaintiff was redesignated to the general population at FCI Terre Haute and successfully completed the six-months post-CMU step-down phase. At the conclusion of that step-down phase, BOP transferred Plaintiff to FCI Ashland in Kentucky, and he arrived there on July 7, 2016.

While at FCI Ashland, Plaintiff was investigated for his possible involvement in an altercation with another inmate. *See id*. The investigation also suggested Plaintiff had attempted to gain support from other Muslim inmates to retaliate against that other inmate with

whom he was involved in an altercation.  As a result, staff recommended that Plaintiff be transferred to another facility based on his attempt to rally or encourage others, and in March 2017, Plaintiff received a closer supervision transfer from FCI Ashland, Kentucky, to FCI Loretto, Pennsylvania.   While at FCI Loretto, Plaintiff was found to have been actively engaging in recruitment efforts in an attempt to radicalize and mobilize others into action upon release from custody.   It was determined that Plaintiff had not changed or altered his ideology or extremist beliefs and that increased monitoring of Plaintiff's communications was necessary to protect the safety and security and good order of BOP institutions, government officials, and the public, and also deter Plaintiff's continued attempts of using inmate communications to convey threats of harm.  *See id.*   The recommendation of the CTU to redesignate Plaintiff to the CMU was concurred by the Acting Assistant Director of Correctional Programs Division, in Frank Lara's absence.

On April 9, 2018, Plaintiff was returned to the CMU at FCI Terre Haute.  On that date, Plaintiff was delivered the Notice to Inmate of Transfer to Communications Management Unit, detailing the reasons he was returned to CMU placement, and he appealed that CMU placement via the administrative remedy process.   On May 15, 2018, Plaintiff submitted a remedy request to the Warden appealing his placement in the CMU.  *See* ECF No. 1 at 27 of 40.   After his grievance was denied by the Warden, Plaintiff appealed to the Regional Director's Office, and thereafter to the Central Office.  *See* ECF No. 1 at 28 and 35 of 40.   At all three levels of the administrative remedy process Plaintiff's CMU placement appeal was denied.  *Id.*

## STANDARD FOR DISMISSAL

On a motion to dismiss pursuant to Rule 12(b)(6), Plaintiff is required to allege grounds for relief beyond mere "labels and conclusions" and "a formulaic recitation of the elements of a

9

cause of action will not do." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* The court must determine whether the complaint "contains[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. a 570). In other words, a petitioner must nudge his "claims across the line from conceivable to plausible[.]" *Twombly* at 570. When this standard is applied to the factual allegations of the Complaint, it is clear that this action should be dismissed in its entirety.

## ARGUMENT

### I. Plaintiff Fails to State Constitutional Claims.

Plaintiff's primary claim is for procedural due process. The test for a procedural due process claim is well established and looks at three factors: first identifying the liberty interest at stake, then considering the risk of erroneous deprivation under existing procedures, and finally weighing the government's interest against the burdens any additional process would entail. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Here, even assuming for purposes of this motion that Plaintiff has established a liberty interest under *Aref v. Lynch*, 833 F.3d 242, 252-57 (D.C. Cir. 2016), the Court should still dismiss because Plaintiff received adequate process and the burdens of additional process would clearly infringe on BOP's ability to make appropriate decisions regarding safe and efficient management of the prison population.

The Supreme Court has held that an inmate transferred to administrative segregation "must merely receive some notice of the charges against him," *Hewitt v. Helms*, 459 U.S. 460, 476 (1983), providing "a brief summary of the factual basis" for placement. *Wilkinson v. Austin*, 545 U.S. 209, 225-26 (2005). After his transfer, the inmate must have "an opportunity to present his views" to the relevant decisionmaker within a reasonable period of time. *Hewitt*,

459 U.S. at 476.  No formal hearing is required.  Instead, "[o]rdinarily a written statement by the inmate will accomplish this purpose."  *Id*.  "So long as this occurs, and the decisionmaker reviews the charges and then-available evidence against the prisoner, the Due Process Clause is satisfied."  *Id*.  Given the heavier restrictions and more severe consequences that result from disciplinary administrative confinement, such procedures are more than adequate to satisfy the requirements of due process for CMU placement.

All of those requirements are met here.  Inmates receive a notice setting forth the basis for their placement in the CMU. *See* BOP Program Statement 5214.02 § 540.202(c) (Apr. 1, 2015), available at https://www.bop.gov/policy/progstat/5214_002.pdf.  They may contest their designation to the CMU by filing an administrative grievance.  *See generally* BOP Program Statement 1330.018 § 540.202(c) (Jan. 6, 2014), available at https://www.bop.gov/policy/progstat/1330_018.pdf.  If the grievance is denied, the inmate may appeal to the relevant decision-maker.  *Id.*  CMU inmates also receive regular ongoing reviews of their placement, which further protect against unwarranted placements and inmates have an opportunity to participate in the review process.  BOP Program Statement 5214.02; *see also Hewitt*, 459 U.S. at 477 n.9.  The exhibits Plaintiff attached to his complaint amply illustrate that he took advantage of this process and that he was given sufficient explanation of the reasons for his placement in the CMU—his repeated attempts to radicalize other inmates, and recruit them into mobilizing others into similar action after release from prison, including threats to kill U.S. civilians and members of the military, even after having been investigated earlier for similar conduct.  ECF No. 1 at 29.  He appealed this finding through the three-step internal appeals process, and at each level, the decision-maker adopted the finding and reasoning below. *Id.* at 24-37.

Due process considerations identified by the Supreme Court in *Mathews,* counsel against adopting additional procedures plaintiffs urge. Because of Plaintiff's status as an inmate with circumscribed liberty, his interest in avoiding transfer to a CMU is minimal. On the other side of the scale, additional procedures would not significantly reduce the risk of error and would significantly burden BOP's ability to carry out its mission, especially given the security concerns and the sensitive nature of the information on which BOP often relies to make CMU decisions. For instance, CMU placements often rely on sensitive or classified information, so listing every reason for CMU placement is not possible in all cases. In-person hearings are impractical because BOP personnel who conduct administrative hearings do not generally have the security clearances required to make the determinations required here and because local hearing officers are also unlikely to have relevant background information and expertise. And providing plaintiffs with advance notice of CMU placement would enable inmates to pass messages prior to their designation or interfere with the transfer process.

Finally, the D.C. Circuit in *Aref* noted explicitly that "only minimal process is likely due" in challenging a designation to the CMU in light of the fact that the challenge goes to "fundamentally predictive judgments in an area where administrators are given broad discretion and the government's legitimate interests in maintaining CMUs must be accorded substantial weight." 833 F.3d at 258 (citing *Hewitt*, 459 U.S. at 472). For these reasons, Plaintiff cannot establish a procedural due process claim, even if the Court were to assume that he could establish a viable liberty interest.

Plaintiff's Complaint also mentions substantive due process and equal protection but these references are make-weights that do not establish separate viable claims. Plaintiff's complaint fails to state a substantive due process claim because he has alleged no "conduct that

'shocks the conscience,' . . . or interferes with rights 'implicit in the concept of ordered liberty.'" *United States v. Salerno*, 481 U.S. 739, 746 (1987). Indeed, the allegations in his complaint come nowhere near the severity necessary for plausible substantive due process claim.

As for equal protection, Plaintiff's complaint fails to state a claim because his allegations cannot show the lack of any rational explanation for BOP's policies or actions, nor does his Complaint allege any facts that would support a claim of discrimination on the basis of a constitutionally protected category. *See, e.g., Romer v. Evans*, 517 U.S. 620, 631 (1996). Plaintiff mentions equal protection in passing and this claim fails as a matter of law.

## II.     There is No APA Review for BOP's Decision to House Prisoner in CMU.

Plaintiff asserts a cause of action pursuant to the APA. The APA generally provides a limited cause of action for individuals "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. Congress delegated to the Attorney General, acting through the Bureau of Prisons, the duty to manage all federal correctional institutions, 18 U.S.C. § 4042(a)(1), and provide for inmate discipline, treatment, care, rehabilitation, and reformation, 18 U.S.C. §4001(b)(2). By statute, BOP's decisions on where to house prisoners are exempt from review under the APA.

First, 18 U.S.C. § 3625 provides: "The provisions of sections 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter." The subchapter consists of sections 18 U.S.C. §§ 3621-26 and 18 U.S.C. § 3621(b) provides:

> Place of imprisonment.--*The Bureau of Prisons shall designate the place of the prisoner's imprisonment*, and shall, subject to bed availability, the prisoner's security designation, the prisoner's programmatic needs, the prisoner's mental and medical health needs, any request made by the prisoner related to faith-based

13

> needs, recommendations of the sentencing court, and other security concerns of the Bureau of Prisons, place the prisoner in a facility as close as practicable to the prisoner's primary residence, and to the extent practicable, in a facility within 500 driving miles of that residence.

18 U.S.C. § 3621(b) (emphasis added); *see also Murray v. Bledsoe,* 650 F.3d 246, 247 n.1 (3d Cir.2011) (explaining that pursuant to 18 U.S.C. § 3625 the APA's provisions for judicial review of administrative agency decisions do not apply to BOP decisions about where to house inmates governed by 18 U.S.C. § 3621(b)).   Federal prison officials possess "full discretion" "to control [ ] conditions of confinement," including prisoner classification and eligibility for rehabilitative programs.   *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976).   Accordingly, APA review is not available to prisoner challenges of BOP decisions regarding inmate housing determinations.   *See Brown v. Bureau of Prisons,* 602 F. Supp. 2d 173, 176 (D.D.C. 2009).

\* \* \*

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss this action for the above stated reasons.

Dated: May 18, 2020

Respectfully submitted,

TIMOTHY J. SHEA, D.C. Bar #437437
United States Attorney for the District of Columbia

DANIEL F. VAN HORN, D.C. Bar #924092
Chief, Civil Division

  /s/ *Alan Burch*
ALAN BURCH, D.C. Bar #470655
Assistant United States Attorney
United States Attorney's Office, Civil Division
555 Fourth St., NW
Washington, DC 20530
(202) 252-2550, alan.burch@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing Motion to Dismiss and supporting Memorandum were was served this 7th day of April 2020 upon pro se Plaintiff by first class mail addressed to:

Farooque Ahmed
R77315-083
Terre Haute FCI
P.O. Box 33
Terre Haute, IN 47808

  /s/ *Alan Burch*
ALAN BURCH, D.C. Bar #470655
Assistant United States Attorney

# TABLE OF AUTHORITIES

**Cases**

*Aref v. Lynch*, 833 F.3d 242 (D.C. Cir. 2016)……………………………...………..…..12

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ………………………………………………………10

*Bell Atl. Corp v. Twombly*, 550 U.S. 544 (2007).   ……………………………….……..10

*Brown v. Bureau of Prisons,* 602 F. Supp. 2d 173 (D.D.C. 2009)………...……………..…….14

*Hewitt v. Helms*, 459 U.S. 460, 476 (1983)…………………………………………….…10, 11

\* *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)…..……………………………………..10

*Moody v. Daggett*, 429 U.S. 78 (1976)…………………..…………………….…………..14

*Murray v. Bledsoe,* 650 F.3d 246 (3d Cir. 2011)……...…………………………………….14

*Romer v. Evans*, 517 U.S. 620 (1996)….……………………………………...………..13

*United States v. Salerno*, 481 U.S. 739 (1987)……………………………………..………..13

*Wilkinson v. Austin*, 545 U.S. 209 (2005)………………...…………………………..………10

**Statutory Provisions**

5 U.S.C. § 702.……………………………………………………………………………13

18 U.S.C. § 3621(b)…………………………………………….…………………………14

18 U.S.C. § 3625………………………………………………………………………….13

18 U.S.C. § 4001(b)(2)……………………………………………...…………………13

18 U.S.C. § 4042(a)(1)……………………………………………………………………..13

\* denotes case chiefly relied upon