UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FAROOQUE AHMED ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | Civ. A. No. 19-1189-CJN |
| ) | |
| FEDERAL BUREAU OF PRISONS, *et al.*, ) | |
| ) | |
| *Defendant*. ) | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION TO ORDER DEFENDANTS TO TIMELY DELIVER AND APPROPRIATELY CLASSIFY PLAINTIFF'S COURT LEGAL MAIL**

Defendants, Federal Bureau of Prisons ("BOP"), *et al.*, by and through undersigned counsel, respectfully submits the Opposition to Plaintiff's Emergency Motion. As we now demonstrate, Plaintiff comes woefully short of demonstrating entitlement to the injunction he seeks.[1]

### FACTUAL BACKGROUND

Plaintiff asserts (at 1) that BOP has "mishandle[ed] [his]mail to and from the Court of Appeals for the District of Columbia, as well as to and from [the District] Court." As evidence of such mishandling, Plaintiff cites (at ¶¶2-3) the August 24, 2021 delivery of an envelope containing an "order [that] was dated June 25, 2021." But the facts paint an unmistakably different story. As a copy of the relevant envelope clearly indicates, the letter from the Clerk of the United States Court of Appeals for the D.C. Circuit was not mailed ***until August 20, 2021***. See ECF No. 43-1 (Circuit letter postmarked "20 AUG 2021PM"). Rather than the delay between mailing and

---

[1] Notwithstanding his status as an Appellant, Mr. Ahmed is referred to herein as Plaintiff to distinguish the forum in which he is now litigating.

delivery to Plaintiff being the **_60 days_** alleged (from June 25, 2021 through August 24, 2021), there were **_only 4 days_** between mailing **_by the Court of Appeals_** and delivery of the order to Plaintiff **_by BOP and its agents_** at FCI Terre Haute.   Similarly, Plaintiff's insistence that BOP bears responsibility for the delay is similarly belied by the facts.  As a matter of irrefutable fact, BOP can bear no responsibility for any delay before the mailing date – August 20, 2021 – since the letter originated with the Court and, therefore, could not have been in BOP hands **_before_** its mailing.  Common experience teaches that even the local mailing of a parcel can take a few days to arrive at its destination.  Assuming the Court's parcel took three days to be mailed from Washington, D.C. to FCI Terre Haute, where Plaintiff is incarcerated, that means the prison delivered it to Plaintiff the very next day.  Whether it took BOP 1, 2, 3 or 4 days to deliver the letter to Plaintiff is inconsequential.  Plaintiff has provided no basis for ruling that any delay of such short length is actionable and common sense teaches otherwise.

      Plaintiff also cites the absence of correspondence from the Court as evidence that "something fish is going on with [his] mail."  See D.C. Circuit Docket, *Farooque Ahmed v. BOP, et al.*, 21-5134, October 12, 2021, Letter from Farooque Ahmed to United States Court of Appeals for the District of Columbia (Document #1918927 at 2).  But the understandable solicitude shown *pro se* litigants has its limits, and this is one of them:  the system simply cannot abide converting the Court and the Defendant into Plaintiff's investigator and paralegal, probing every suspicion however unfounded.  Plaintiff's suspicions are unfounded; he received no further missives from the Court not because BOP nefariously intercepted them in an effort to subvert his constitutional right of access to the courts as Plaintiff irresponsibly implies, but simply because none was thereafter sent.  If, as we assume, Plaintiff is able to view the Court of Appeals docket, the failure to confirm that no letters to Plaintiff went unaccounted for is simply inexcusable.

## LEGAL STANDARD

"The standard for issuance of the extraordinary and drastic remedy of a temporary restraining order or a preliminary injunction is very high." *Jack's Canoes & Kayaks, LLC v. Nat'l Park Serv.*, 933 F. Supp. 2d 58, 76 (D.D.C. 2013) (internal quotation marks and citation omitted). It is "never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A movant seeking a preliminary injunction must establish "[1] that [the movant] is likely to succeed on the merits, [2] that [the movant] is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in [the movant's] favor, and [4] that an injunction is in the public interest." *Id*. at 20.  Ordinarily, a plaintiff must "carr[y] the burden of persuasion" on each of these four factors "by a clear showing." *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004).  In attempting to sustain that burden of persuasion, a party may rely on "evidence that is less complete than in a trial on the merits," *NRDC v. Peña*, 147 F.3d 1012, 1023 (D.C. Cir. 1998), but the quantity, quality and credibility of that evidence are significant factors in evaluating whether a party carries its burden. See generally *Mitchell v. Fed. Bureau of Prisons*, 587 F.3d 415, 421 (D.C. Cir. 2009) (a lack of detail from prisoner requesting medical treatment, including what requests prisoner made of staff and responses, can prevent finding of imminent harm).

Courts balance the strength of each factor.  See, *e.g.*, *Nken v. Holder*, 556 U.S. 418, 435 (2009).  But if the moving party fails to demonstrate a likelihood of success on the merits, the court "need not consider the other factors." *Greater New Orleans Fair Hous. Action Ctr. v. Dep't of Housing & Urban Dev.*, 639 F.3d 1078, 1089 (D.C. Cir. 2011). Likewise, a court need not balance the other factors if the plaintiff makes no showing of irreparable harm. See *CityFed Fin.*

*Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995). Thus, while the test for issuance of a preliminary injunction contains four factors, the first two factors—likelihood of success and irreparable injury—are the most significant aspects of the inquiry.

## ANALYSIS

"[T]he first and most important" of these four factors is whether the movant "ha[s] established a likelihood of success on the merits." *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014).[1] Plaintiff's Motion omits any argument on this factor, and the existing claim does not implicate BOP as all of the meaningful delay *preceded* the mailing to BOP. Thus, even construing the allegations in the motion broadly in light of Plaintiff's *pro se* status, they likely fail to satisfy the plausibility standard for pleading a claim because they are so vague and conclusory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Indeed, by failing to proffer a plausible factual basis for an injury traceable to BOP's alleged conduct, Plaintiff lacks standing to bring this claim. See *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (standing requires a showing of injury in fact that can be traced to the challenged conduct and redressed by courts). In short, Plaintiff is not likely to succeed on the merits of a claim charging BOP with responsibility for delays in the delivery and receipt of legal mail as neither the length of any delay potentially attributable to BOP was unreasonable and because any greater delay was demonstrably not caused by BOP.

Other evidence from the Court of Appeals' docket further belies Plaintiff's claims of nefarious delays attributable to BOP in either direction: mailings to, or received from, the Court. For instance, mail from the Court received at the prison on October 5, 2021 was delivered to Plaintiff on October 6, 2021. See October 12, 2021, Letter from Farooque Ahmed to United States Court of Appeals for the District of Columbia (Document #1918927 at 3). The same letter

similarly establishes that there were no actionable delays in Plaintiff's mail as his October 12, 2021 letter to the Court was received by the Court on October 18, 2021. *Id.* at 1.

Likewise, on Thursday, September 23, 2021 Plaintiff drafted a cover letter to the Court, which accompanied a motion to appoint counsel. Although it is unknown when the parcel was mailed from Terre Haute, USPS tracking information indicates that it was received at a USPS Regional Distribution Center in Indianapolis on September 28, 2021 and arrived at the Court of Appeals on October 12, 2021. See https://tools.usps.com/go/TrackConfirmAction?qtc_tLabels1= 9114902200789647670974 (last checked Nov. 5, 2021). Since September 26, 2021 was a Sunday, the parcel was most likely mailed before then, either on the preceding Thursday (23rd), Friday (24th) or Saturday (25th). As such, the parcel could have been in the prison's hands no longer than two days, in transit for as many as 17 days, and in the Court's possession (from receipt to docketing) for 14 days.[2] On none of these facts can a colorable claim of nefarious BOP delay be grounded.[3]

Second, Plaintiff also fails to show irreparable harm, whose considerable burden requires proof of an injury that it certain, great, imminent, and actual, not theoretical, such that the extraordinary need is both clear and present. See, *e.g.*, *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir.1985). First, there is no harm whatever – much less irreparable harm – attributable to

---

[2]   While the Court's own stamp of receipt confirms the October 12, 2021 delivery date, the contents were not docketed until October 26, 2021.

[3]   Plaintiff's assertions are long on invective, but short on proof. For instance, Plaintiff's intemperate – and very serious – accusation (at ¶ 6) that it is the *modus operandi* of the FCI Terre Haute's Communications Management Unit ("CMU") to delay and interfere with the delivery of correspondence to and from courts whenever it inconveniences them is utterly without support in the record before this Court. Plaintiff's *pro se* status is no license for making such baseless and incendiary claims. They are intolerable and antithetical to the administration of justice.

BOP. Again, the two-month delay was about which Plaintiff complains is not attributable to either the prison or BOP. [4]

Moreover, that the Court of Appeals granted Plaintiff's Motion for Extension of Time or Abeyance belies a claim of irreparable harm for any of the delays caused by others, whether the United States Postal Service or the Court, itself. By granting Plaintiff's motion, the Court of Appeals ameliorated any harm attributable to the delay in Plaintiff's receipt of the Court's order – precisely what the special solicitude shown for incarcerated *pro se* litigants assures. It is unimaginable that a Court faced with evidence that its order was not received would hold an incarcerated litigant responsible for failing to act on the missing order. Thus, Plaintiff's doomsday predictions that CMU's imagined transgressions "may ultimately cause Plaintiff to miss court deadlines through no fault of his own, and without Court knowledge" are counterfactual, inconsistent with universal practice and the special solicitude shown for incarcerated *pro se* litigants, and, therefore, the very opposite of irreparable. As it did here with respect to a delay apparently attributed to its own failure to mail the order timely (see *supra* at 2), the Court would simply extend the deadline for Plaintiff to act on the Court's order or vacate any order issued before Plaintiff received notice.

In sum, it is clear that Plaintiff has failed to establish irreparable harm. These two findings are more than sufficient to sink his claim. Nonetheless, in the interest of completion, we complete the analysis with one final observation.

---

[4] We note here, again, that no delay has been attributed to BOP. Plaintiff dates his letter and motion August 27, 2021 – a Friday. Assuming that his parcel was not mailed until Monday, accounting for weekends at the Labor Day holiday, it was docketed within 12 days of mailing, even without accounting for the possibility of some delay in the opening of mail at the Court of Appeals and docketing of the motion. Plaintiff has failed to establish that 12 days is an unreasonable delay and has no way of attributing any delay to BOP.

When the government opposes a motion for a preliminary injunction, the third and fourth factors merge. See *Nken*, 556 U.S. at 435. Here, the merged elements yield no different result. The hardships attendant to issuing the injunction Plaintiff seeks outweigh the harm if the Court denied injunctive relief. On the current record, the balance of equities as well as the public interest do not support an injunction. The Courts are, and should remain, loathe to begin running the operations of executive branch agencies. Directing BOP to change its operating procedures for handling inmate mail would be a stark departure from the deference that a correlative branch of government is entitled to receive. Indeed, the Supreme Court has indicated that courts should generally afford those BOP officials "appropriate deference and flexibility[,]" especially in managing the "ordinary incidents of prison life" which including communications and mail. See *Sandin v. Conner*, 515 U.S. 472, 482-83 (1995). Here, the Court should decline to issue an injunction that would impact prison administration – especially on this poor record. *Id.*

For all these reasons, Plaintiff's request for the extraordinary and drastic relief of preliminary injunction must be denied.

Dated: November 5, 2021            Respectfully submitted,

CHANNING D. PHILLIPS, D.C. Bar #415793
Acting United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division

By: */s/ John Moustakas*
John Moustakas, D.C. Bar #442076
U.S. Attorney's Office – Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-2518
john.moustakas@usdoj.gov

*Attorneys for the United States of America*